J-S13026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RASHEEN ELLIS | : | |
| | : | |
| Appellant | : | No. 899 WDA 2023 |

Appeal from the Judgment of Sentence Entered April 21, 2023
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000451-2022

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                    **FILED: JULY 23, 2024**

Rasheen Ellis ("Ellis") appeals from the judgment of sentence entered by the Blair County Court of Common Pleas ("trial court") after a jury found him guilty of strangulation, two counts of simple assault, and two counts of harassment.[1]  He challenges the trial court's exclusion of evidence of the victim's criminal history and its failure to enter a judgment of acquittal.  Upon review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2718(a)(1), 2701(a)(1), 2709(a)(1).

The record reflects that Ellis and his then-paramour, Kelly Musto ("Musto"), met while working together in a factory.[2] N.T., 8/15/2022, at 51. They dated for about eight months, from the summer of 2021 until February 19, 2022. *Id.* at 50-51.

On February 19, 2022, Ellis and Musto were watching a movie together mid-day. *Id.* at 67. During the movie, Ellis stared intensely and angrily at Musto. *Id.* at 67, 68. Musto felt uncomfortable and asked him to stop. *Id.* at 67. Sensing "something was brewing," she stood up to remove herself to the kitchen and Ellis slapped Musto's wine glass out of her hand, causing it to hit a wall and break. *Id.* at 67-68, 69, 70. Musto ran to get her keys by the front door but Ellis grabbed both her and the keys and threw Musto on the stair landing. *Id.* at 71. With Ellis on top of her, Musto tried to get up, but each time she tried, Ellis slammed her head, neck, and shoulders down on the landing. *Id.* at 71-72. Ellis then put both of his hands around Musto's throat and "push[ed] and squeez[ed] to choke" her. *Id.* at 71, 73. When Ellis applied pressure to her throat, Musto's airway was obstructed and she had difficulty breathing. *Id.* at 73. She did not know how long he obstructed her breathing, but it "seemed to [her] like forever." *Id.* At some point, Ellis stopped but when Musto stood up and moved off the stair landing, he again

---

[2] At trial, Ellis was 43 years old and Musto was 59 years old. N.T., 8/15/2022, at 50-51. Ellis is 6'2" tall and at the time, weighed about 220 pounds. *Id.* at 52, 156. Musto is 5'7" tall and weighed between 150 and 160 pounds. *Id.* at 50, 156.

grabbed and threw her down in a hallway. *Id.* at 74. Ellis got back on top of Musto and again pushed and squeezed his hands around her neck. *Id.* The second time, Ellis applied more pressure around her neck; Musto had a harder time breathing than before, was "really struggling" to breathe, believed he was "going to kill [her]," and feared for her life. *Id.* at 75-76. Ellis eventually stopped and let Musto get up. *Id.* at 76. Musto, looking for "an opportunity to run," retrieved a broom and spare key from the basement and pretended to clean up the broken glass. *Id.* at 76-78. As soon as Ellis started to go upstairs, Musto ran to her car—still wearing her slippers even though it was winter and there was snow on the ground—and drove to the house of her friend, Lisa Albright ("Albright"). *Id.* at 37, 76-79, 103, 129.

While driving, Musto caught a glimpse of herself in the rearview mirror and saw her neck was "bright red" with "[c]lear hand marks around [her] throat." *Id.* at 79. She took photographs of her neck and lower face at that time. *Id.* at 79; Commonwealth Exs. 9-10 (photographs of Musto's neck, chest, chin, and lip). Musto arrived at Albright's house upset, crying, and in disbelief. N.T., 8/15/2022, at 102. After Musto arrived, they drank together and Musto became intoxicated. *Id.* at 80-81, 96, 105, 128, 136-37. Musto was afraid of Ellis' retaliation if she reported the incident to police; Albright convinced her to report it and called the police about ninety minutes later. *Id.* at 81-82, 115-16. Musto stayed over at Albright's house that night. *Id.* at 52, 97.

Police Officers Adrianna Lucas and Noah Bollman responded to Albright's house shortly after 6:00 p.m. that evening. *Id.* at 34, 127. Each officer interviewed Musto and Albright. *Id.* at 36-37, 127. Musto showed signs of intoxication but was able to understand and answer the officer's questions; Albright was not intoxicated. *Id.* at 36-37, 81-82, 128. Officers Lucas and Bollman observed, and Officer Bollman photographed, injuries on Musto's head, chest, arms, leg, ankle, and foot. *Id.* at 38-45, 129-34; Commonwealth Exs. 1-8 (photographs of Musto's injuries).

While Musto was reporting this incident to police, she also reported another incident with Ellis that had occurred at her house on February 11, 2022. N.T., 8/15/2022, at 54-59. After Ellis returned from work at about 10:00 p.m., he and Musto got into a verbal argument that escalated. *Id.* at 55. Ellis grabbed Musto, "threw [her] on the floor," and kicked her multiple times in the head, chest, ribs, and legs while he was wearing his steel-toed work boots. *Id.* at 55-57. Musto did not call the police after this incident because, if she did, Ellis threatened to "have his cousin beat [her] up" and "have his people burn [her] house down." *Id.* at 58-59.

As a result of the February 11, 2022 assault, Musto suffered injuries, including a fractured rib, a blood clot on her left leg that left a permanent "indentation," and swollen lumps and bruises on her head, arms, foot, and leg. *Id.* at 59-66, 95-96, 107-15, 129-34; Commonwealth Exs. 1-8 (photographs of Musto's injuries). One of Musto's feet was purple, swollen to

"three times the size" of her other foot, and "very hard to touch." N.T., 8/15/2022, at 108. A short time later, Musto sought medical treatment because her pain had not subsided; she continued to have difficulty breathing, putting on a shoe, and walking. *Id.* at 60, 63, 118-19.

Thereafter, police arrested Ellis and the Commonwealth charged him with the aforementioned offenses. The matter proceeded to a jury trial on August 15, 2022. The Commonwealth presented the testimony of Musto, Albright, and Officers Lucas and Bollman, as well as photographs of Musto's injuries. Ellis testified in his own defense. At trial, Ellis admitted that Musto did not strike him during either incident, but he accused her of lying about the incidents and denied strangling or assaulting her. *Id.* at 146, 153-54, 160, 166. Regarding the February 11, 2022 incident, Ellis testified that he came home from work to find Musto had been drinking; the two of them argued about it; when she went upstairs to bed, she fell down the steps; he helped her back up; and they went to bed. *Id.* at 146, 158, 166. Ellis denied owning work boots and kicking Musto. *Id.* at 146, 160.

With respect to the February 19, 2022 incident, Ellis testified that they had gone out for breakfast that morning and he felt uncomfortable with Musto looking at a group of men "with eyes of attraction." *Id.* at 163. Ellis said he confronted Musto and they argued about it when they returned to her house. *Id.* at 164. He said the argument escalated because Musto was drinking and she tried to leave with her keys; he said when he tried to stop her, he "pushed

her onto the couch," "pushed her glass" out of her hand, and threw down his own wine glass. *Id.* at 152-53, 165-68. He did not know what caused the redness on Musto's neck and chest, but thought it might be from her drinking. *Id.* at 153, 169.

A jury convicted Ellis of all charges. The trial court ordered a pre-sentence investigation ("PSI") report and after a hearing on April 21, 2023, sentenced Ellis to an aggregate term of 60 to 120 months of imprisonment. Ellis filed a post-sentence motion, which the trial court denied. This timely filed appeal followed.

Ellis raises the following two issues on appeal:

I.   Whether the [t]rial [c]ourt erred and/or abused its discretion in prohibiting evidence and testimony regarding the recent conviction of [Musto] in which she was the perpetrator of domestic violence against [Ellis], thus depriving [Ellis] of presenting a justification defense.

II.  Whether the trial court erred and/or abused its discretion in not granting judgment of acquittal notwithstanding the verdict.

Ellis' Brief at 7 (unpaginated).

In his first issue, Ellis argues that the trial court erred when it excluded evidence of Musto's domestic violence conviction against him, which, in turn, prevented Ellis from presenting a self-defense claim. *Id.* at 9. He points to the following exchange during Ellis' direct examination at trial, when defense counsel asked him what time he got back to Musto's house on February 19, 2022:

[ELLIS]:    I'd probably say about 12:30.  This is all happening like right in order.  So I tell her I say we don't need any more wine.  You're on probation and ---

[COMMONWEALTH]:    May I approach, Your Honor.

* * *

(SIDEBAR)

[COMMONWEALTH]:    I kind of let him talk for a little while when he's referencing drug use I've left [sic] that and now he's referencing probation, clearly a way to attack her character, Judge.  There's no other reason to bring that up.

[DEFENSE COUNSEL]:  Unfortunately I didn't know he was going to bring that up.

[TRIAL COURT]:  Okay.  So let's just move on.  Obviously nobody asked any questions.

[COMMONWEALTH]:    Right.

[TRIAL COURT]:  I mean after his testimony is over and [we] talked [sic] about points of charge[,] you can craft something you want me to say to the jury I can try --- He didn't ask him [a] question.

[COMMONWEALTH]:  No.

[TRIAL COURT]:  Don't.

[DEFENSE COUNSEL]:  Okay.

[COMMONWEALTH]:    And I'd ask if [defense counsel] could advise him not to bring up any drug use in the past or probation because I think it's very clear what [] Ellis is doing here.

[TRIAL COURT]:  Okay.  I took what he said like he was ---

[COMMONWEALTH]:    Uh-huh ( yes).

[TRIAL COURT]:  And this seems ---

- 7 -

[COMMONWEALTH]: Well I don't think it matters. I think what he's trying to do here is go after the character of [] Musto. He's attack –-- he's trying to attach [sic] her credibility, Your Honor. Even if he's ---

[TRIAL COURT]: The problem in trial.

[COMMONWEALTH]: It is a [sic] very impermissible character evidence that's my problem. If he wants to talk about what --- how she was acting on that day or anything like that. Not what they did the night before, that has nothing to do with what happened in these incidents.

[TRIAL COURT]: Okay.

[COMMONWEALTH]: So that's my argument, Judge.

[TRIAL COURT]: Thank you.

(SIDEBAR ENDS)

N.T., 8/15/2022, at 148-51; **see also** Ellis' Brief at 11-12 (unpaginated).

Based on the foregoing, Ellis contends the trial court improperly excluded evidence of Musto's criminal history, arguing it was admissible evidence of her character trait of violence pursuant to Pa.R.E. 404(a)(2)(B)[3] and admissible evidence of Musto's motive and common plan or scheme pursuant to Pa.R.E. 404(b)(2).[4] Ellis' Brief at 11-18 (unpaginated). According

---

[3] Rule 404(a)(2)(B) provides that in criminal cases, subject to statutory limitations, a defendant may offer character evidence of an alleged victim's pertinent trait. Pa.R.E. 404(a)(2)(B). If the evidence is admitted, the prosecutor may offer evidence to rebut it and evidence of the defendant's same trait. **Id.** 404(a)(2)(B)(i)-(ii).

[4] Rule 404(b)(2) provides that, character evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation,
*(Footnote Continued Next Page)*

to Ellis, the trial court erred when it baldly asserted in its opinion that such evidence would be unfairly prejudicial, contending that the trial court's concern of confusing the jury does not equate to undue prejudice. *Id.* at 13-14. Ellis assails the trial court's lack of analysis at trial and in its opinion as to why the evidence was excluded. *Id.* Ellis argues that if he had been able to present this evidence, he would have been able to argue that Musto was "the initial aggressor and he only responded with physical action to protect himself in self-defense." *Id.* at 17.

In its opinion, the trial court found the issue waived because Ellis failed to object or assert a self-defense claim at trial. Trial Court Opinion, 12/19/2023, at 5. Even if Ellis had preserved the issue, the trial court found any evidence of a prior domestic violence incident involving Musto and Ellis not relevant to whether Ellis was acting in self-defense on February 11 and 19, 2022. *Id.* The trial court further found that, even if preserved and such evidence was somehow relevant, it would "present such a great risk of the jury confusing the issue that it [would] outweigh[] the relevancy of the evidence. Had this evidence been presented to the jury, there is a likelihood that the incident referenced by [Ellis] could have been confused with the

---

plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

incident that resulted in [Ellis'] criminal charges, and could lead the jury to make a decision on an improper basis." *Id.*

We begin by observing that, while Ellis argues in his brief that evidence of Musto's criminal history should have been admitted as evidence of Musto's trait of violence and to show her motive and common plan or scheme under Rule 404, he raised no such issue in his Rule 1925(b) statement. Rather, in his concise statement, Ellis contended that the evidence was admissible to show he acted in self-defense.[5]  As such, the issue is waived.  *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

We further observe, as the trial court and Commonwealth did, that Ellis did not attempt to assert a theory of self-defense at trial.  *See* Trial Court Opinion, 12/19/2023, at 5; Commonwealth's Brief at 9, 14, 18.  Rather, he raised the self-defense issue for the first time in his Rule 1925(b) statement. Ellis' counsel did not make any reference to self-defense in his closing

_____

[5] ***Compare*** Rule 1925(b) Statement, 8/30/2023, ¶ 1 ("Whether the Trial Court erred and/or abused its discretion in prohibiting evidence and testimony regarding the recent conviction of [Musto] in which she was the perpetrator of domestic violence against the Defendant, thus depriving the Defendant of presenting a justification defense."), ***with*** Ellis' Brief at 9-18 (unpaginated) (arguing "evidence of [Musto's] conviction of domestic violence against [Ellis]" is admissible under Pa.R.E. 404(a)(2)(B) as evidence of Musto's character trait of violence, and under Pa.R.E. 404(b)(2) as evidence of Musto's motive, common plan, and scheme of her violent propensities).

argument or request a jury instruction regarding self-defense.[6] Ellis instead denied at trial strangling or assaulting Musto. **See** N.T., 8/15/2022, at 146, 153-54, 160, 166. Indeed, a self-defense claim would have contradicted Ellis' theory that Musto injured herself falling down the stairs and that her skin became flushed from drinking. **See id.** at 146, 153, 158, 166, 169. Ellis cannot raise a new legal theory on appeal that is different from that raised at trial; accordingly, this claim is waived on that basis as well. **Commonwealth v. Truong**, 36 A.3d 592, 598-99 (Pa. Super. 2012) (en banc) (holding claim waived where appellant argued at trial he acted in legitimate self-defense at the onset of the incident, which escalated into a heat of passion killing, but he argued on appeal an imperfect self-defense claim); **see also** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

And finally, we observe that Ellis failed to preserve this issue at trial. The trial court did not rule on the admissibility of evidence of Musto's criminal history or her propensity for violence at trial because Ellis never raised the

_____

[6] In his opening statement, defense counsel alluded to mutual combat, but never developed any argument, testimony, or evidence to show the February 11 and February 19, 2022 incidents involved mutual combat between Ellis and Musto. **See** N.T., 8/15/2022, at 29. Moreover, Ellis' own testimony contradicts any suggestion of mutual combat. **See** N.T., 8/15/2022, at 146 (Ellis testifying that Musto did not strike him on February 11, 2022), 153 (Ellis testifying that Musto did not strike him on February 19, 2022), 154 (same), 166 (Ellis testifying that "it was not an altercation that [Musto] was trying to fight [him]"), 166 (Ellis responding on cross-examination that Musto was not trying to fight him on February 19, 2022).

issue. Further, defense counsel did not make any argument in opposition to the Commonwealth's objection to the references to Musto's drug use and probationary status, nor did he ask the trial court to rule on the admissibility of evidence of prior domestic violence incidents involving Musto as a perpetrator against Ellis. **See** N.T., 8/15/2022, at 148-51; **see also id.** at 91 (after the Commonwealth's objection to defense counsel's question involving whether Musto ever struck Ellis in the past, defense counsel did not make any argument or seek the trial court's ruling, but instead offered to limit his questioning to the February 11 and February 19, 2022 incidents). As such, the issue is also waived on this basis. **See** Pa.R.A.P. 302.

In his second issue, Ellis challenges the trial court's denial of his post-trial motion for a judgment of acquittal.[7] Ellis' Brief at 18 (unpaginated). He does not argue, however, that the evidence was insufficient to sustain his convictions, as he did in his post-trial motion. **Compare** Ellis' Brief at 18-19 (unpaginated), **with** Motion for Judgment of Acquittal, 5/1/2023, ¶¶ 6-8 (arguing insufficient evidence because his convictions were "based solely" on

_____

[7] A motion for a judgment of acquittal is a challenge to the sufficiency of the evidence to sustain a conviction. **See** Pa.R.Crim.P. 606(A)(6) ("A defendant may challenge the sufficiency of the evidence to sustain a conviction of one or more of the offenses charged" by filing "a motion for judgment of acquittal made after sentence is imposed pursuant to [Pa.R.Crim.P. 720(B)[.]"); **Commonwealth v. Stahl**, 175 A.3d 301, 303 (Pa. Super. 2017) ("A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.") (citation and quotation marks omitted).

Musto's testimony; no medical evidence was "noted"; police did not take any "independent photographs" of Musto's injuries; and the "only proof" was Musto's "word" and an unauthenticated photograph). Instead, Ellis contends his argument from his first issue is applicable to his second issue and that the trial court's exclusion of evidence of Musto's "violent propensities" changed the outcome of the case. *Id.* at 19. He believes that if the jury heard evidence of Musto's "recent in time conviction for domestic violence on" Ellis, the jury would not have convicted him. *Id.* He seeks remand to the trial court for a new trial. *Id.*

Essentially, Ellis' second issue is the same as his first; in both, he is asking us to find error in the trial court's exclusion of evidence of Musto's criminal record involving a domestic violence incident against Ellis. As discussed above, this issue is waived.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/23/2024